THE PEOPLE, APPELLANTS, *v.* JOHN WILLIAMS, RESPONDENT.

INDICTMENT—MOTION.—For the purposes of a motion to set aside an indictment, the facts stated in it are to be taken as true.

TIME.—If there was no law defining the crime and imposing a penalty at the time the offense is alleged in the indictment to have been committed, time is material, and the indictment should be set aside.

MOTION.—A motion to set aside an indictment, based upon objections going to the merits of the case, can be made at any time, either before or after judgment.

APPEAL from the second district, Boise county.

*C. B. Waite,* district attorney, for the people.

*S. A. Merritt,* for the respondent.

McBRIDE, C. J., delivered the opinion of the court, CUMMINS, J., concurring, KELLY, J., dissenting.

This case comes up on appeal from a decision of the district court, quashing the indictment.

The following are the facts: The defendant, John Williams, was charged by the indictment with the crime of highway robbery, committed in the month of September, 1863, in the county of Boise, territory of Idaho. The indictment was found at the July term, 1865, and the defendant, being in custody, pleaded not guilty. Subsequent to this plea, but before trial, the defendant, by his counsel, moved to

set aside the indictment. The motion was sustained, and the prisoner ordered to be discharged. This ruling was excepted to by the attorney for the people, and the case stands for decision upon this motion, and the alleged error of the court below in granting the same. Preliminary to an investigation of the main question which is involved in the decision below, it will be necessary to refer to some points raised by the district attorney in the brief by the appellants.

It is claimed by the appellants that though the indictment charges the offense to have been committed in September, 1863, the time is no material ingredient of the offense charged, and that the indictment would be supported if the proof should show that the crime was committed within the statutory time, although not upon the day charged, and as there was no proof—there having been no trial—that the offense was committed in September, 1863, when it was claimed no law existed for its punishment, that the court erred in granting the motion, as it might have appeared that it was committed after that time, and when no such objection would lie. This is an error. For the purposes of the motion, the court must take the facts as stated in the indictment to be true. Time is material in this offense, and though it need not be proved as laid strictly, still where the time becomes a question of materiality the court must assume that it is stated according to the fact, and if there was no law defining this crime, and inflicting a penalty at the time when it is alleged to have been committed, then the indictment should have been set aside, and there is no error.

The second point of the appellant is that the defendant having been set at liberty under the order of the court below, the court should not take cognizance of this appeal. This appeal is taken by the people, and the district attorney has the right, if he chooses, to dismiss the appeal; but to prosecute the appeal, and deny the effect of its design, is certainly not allowable.

A third point assigned is that the motion was made to set aside the indictment after the defendant had entered his plea of not guilty, and that the motion came too late, and, therefore, the order should have been refused, and now re-

versed. The statute settles this question—and reason as well; the objection going to the merits of the prosecution could be raised at any time before or after judgment. It would have been the duty of the court to consider it any time during the progress of the trial, and to have arrested the judgment after verdict. It would be the height of absurdity to say that a court might be fully convinced that it had no authority to pass sentence upon a case, yet must proceed to try a criminal because it had begun the proceedings.

Having disposed of these preliminary questions, it remains to be decided whether there was any law for the punishment of defendant for the offense charged in the indictment. On the third day of March, 1863, congress organized the territory of Idaho by cutting off certain territory from the already organized territories of Washington, Dakota, Nebraska, and Utah. The territory of Idaho then became a separate political community, and the power of government, of making and enforcing statutes, of preserving the rights of the people and punishing wrong-doers, was vested in the citizens of the territory in the manner prescribed by the organic act. Did this segregation of the territory of Idaho from the other territories named leave it without any criminal code? It undoubtedly was a repeal of the several organic acts named—they no longer had any form or validity, had been superseded and become nullities. How they could cease to exist, and yet laws remain in force, deriving their validity from authority conferred by them, we can not understand. It would be to extinguish the fountain and insist upon the rivulet continuing its flow—cutting off the source of life and affirming continued vitality. To provide against any such hiatus in the criminal code, where there is a transition from one form of government to another, it is always provided that the remedies shall subsist in full force. Thus in organizing a state government the universal practice is to continue, by special provision, the pre-existing laws; so in organizing new territories the usual provision is to continue the laws of the old political division until the enactment of new ones.

In organizing the territory of Oregon, in 1848, congress

affirmed and continued the laws of the former provisional government until they should be altered or repealed. The uniform practice in this respect conclusively establishes, we think, the principle that the laws of the old organization have no force in the new political community unless by special provision. We are now speaking only of criminal laws. In civil matters the questions of rights and remedies are so different that the same rules do not necessarily apply.

In the act organizing this territory no provision is contained recognizing the former laws. Indeed, to have done so would have given vitality to four different codes of law in different parts of the new territory. Confusion would have followed inevitably, and the fact of this difficulty sufficiently accounts for the omission on the part of congress to provide for their continuance until the new legislature should provide for the wants of the country.

There is no similiarity between this case and that of a conquered or ceded territory whose sovereignty is transferred from one authority to another. Then the laws pass with the people and the soil—but not so when the sovereign authority dismembers a piece of territory and makes no provision for the new community.

We are therefore .of opinion that there was no statute punishing the offense charged in this indictment at the time it was alleged to have been committed, and that even if the facts alleged be true no sentence could be pronounced. The judgment of the court below will therefore be affirmed.

Judgment affirmed.