## SEPTEMBER TERM, 1897.

24   255<br>24   286

### [No. 3579.]
### Laughlin v. City of Denver.

1. Town Sites—Trustee's Powers—Streets.
A trustee under the town site acts is not authorized to designate any part of the tract in possession of an actual occupant, as a part of a street.
2. Same.
A conveyance by a trustee under the town site acts so vests the legal title in the grantee that one who was not, at the time of the conveyance, a beneficiary under the trust and interested in the land cannot, in his own right, thereafter question the validity of the deed.
3. Limitations—Common Law.
The act of parliament of the 21st year of James I, prescribing a limi-

tation as to real actions and limiting it to twenty years, has never been adopted as a rule of decision in this state.

4. SAME—COLOR OF TITLE.

When the deed under which a party claims, designates the tract conveyed by reference to a map or plat by which a portion of the lot is marked as a street, it does not, as to the part so marked, constitute color of title.

*Error to the District Court of Arapahoe County.*

THIS is an action brought by Alexander Laughlin, plaintiff below, against the city of Denver, defendant below, to recover possession, or the value, of certain real estate, alleged to have been wrongfully entered upon and appropriated by the defendant. Trial to the court; judgment in favor of defendant. For cause of action plaintiff avers, in substance, that he was the owner in fee of the following described real estate:

"Beginning at a point two hundred and eighty and one-half feet (280 1/2) southwesterly from the northwest corner of Larimer and Sixth streets, on the northerly line or side of said Larimer street, thence north thirty (30) degrees west 336 feet, thence south sixty (60) degrees west 40 feet, thence south thirty (30) degrees east 214 feet, thence south five (5) degrees west 70 feet, thence south thirty (30) degrees east 65 feet, thence north sixty (60) degrees east 80 feet to the place of beginning."

That he entered upon said land on July 13, 1865, under a deed from one Andrew Sagendorf and Elizabeth Sagendorf to him; and has held exclusive, continuous and uninterrupted possession of said land up until the 10, 11, and 13, days of February, 1893, when the defendant, without leave, and over his protest, forcibly entered upon said land and removed certain houses and fences, cut down and removed certain trees, ousted and ejected the plaintiff therefrom and converted and used said land for a street; and continues to hold and occupy the same for that purpose, to his damage in the sum of $50,850.

For answer the defendant denies the allegations of the complaint, and avers that from June 29, 1865, until February,

1893, the defendant was the owner in fee, in trust for the use of the public, of the land in question, the same having been laid out, platted and recorded as a street on said 29th day of June, 1865; and since that time has continued to be a public street of the city of Denver; that after said land so became a street, the plaintiff, not then, nor ever having had or acquired any right, title or interest therein, obstructed the same by erecting and maintaining thereon the house, fences and trees mentioned in the complaint; which obstructions remained in said street up to, on, or about February 10, 1893. That plaintiff, after due notice, having failed and refused to remove said obstructions, the defendant removed them, using due care in so doing not to injure plaintiff's property, and not, in fact, injuring the same. All of which allegations are traversed by plaintiff's replication.

Mr. ROBERT E. FOOT, for plaintiff in error.

Mr. F. A. WILLIAMS, Mr. GEO. C. NORRIS and Mr. E. J. SHORT, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

It appears from the undisputed facts that the land in controversy is included in the town site of Denver, which was entered in the proper land office by James H. Hall, county judge of Arapahoe county, May 6, 1865, under and in pursuance of the act of congress relating to town sites, passed May 23, 1844, as extended May 28, 1864. The first of these acts referred to, authorizes the probate judge to enter, at the proper land office, the lands settled and occupied "in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same is situate."

The second was a special act "for the relief of the citizens of Denver;" and authorizes "the probate judge of Arapahoe county, in the territory of Colorado, to enter, at the minimum price, in trust for the several use and benefit of the rightful occupants of said land the *bona fide* owners of the improvements thereon, according to their respective interests," certain specified divisions of land.

On March 11, 1864, the territorial legislature of Colorado passed an act prescribing rules and regulations for the execution of the trust arising under these acts, which, *inter alia*, contains the following provisions:

"Sec. 2. Any such * * * judge * * * holding the title of such land in trust, * * * shall * * * grant and convey the title to each and every block, lot, * * * to the person or persons who shall have, possess, or be entitled to possession or occupancy thereof, according to his, her, or their several and respective rights or interest in the same, as they existed in law or equity, at the time of the entry of such lands, or to his, her, or their heirs or assigns."

"Sec. 18. If the title to any such land shall be vested in any judge, such judge shall convey to the people, or to the legal authorities, the land used or laid out by the town authorities, as streets, lanes, avenues, parks, commons and public grounds, within such time as is herein prescribed for making conveyances to individuals."

On May 29, 1865, F. J. Ebert, city surveyor of the city of Denver, filed with the clerk of said city a map of the then city of Denver, which was approved by the city council on June 22, 1865, and filed for record with the clerk and recorder of Arapahoe county on June 29, 1865; that there is shown on said map, outlot or block No. 257, in what is known as the west division of the city of Denver; and to the west thereof is marked Jefferson street; that the land in dispute is a part of the street so marked.

On August 29, 1865, James H. Hall, as probate judge, in pursuance of section 18 of the territorial act of 1864, conveyed by deed to the defendant, the streets, lanes, avenues

and alleys of the city of Denver, lying within the tract of land surveyed and platted by Ebert, including Jefferson street, which deed was recorded on June 8, 1867.

On July 13, 1865, plaintiff bought from Sagendorf and wife, the occupants thereof, a tract of land inclosed by a certain fence, which included the land described in the complaint, upon which there stood at the time a log house; and also the land described in Ebert's map as outlot or block No. 257; and received from them a quitclaim deed, which he supposed described the whole tract, but which conveyed only that portion designated as outlot or block No. 257.

Plaintiff entered into possession of the land so purchased, occupied and lived in the log houses; in 1866 planted trees and built a stable, corral, barn and outhouses; and in 1871 built a frame house on the land in dispute; plowed and used the balance of the ground for gardening and grazing purposes; occupied, used, cultivated and possessed said land uninterruptedly from July 13, 1865, to February 10, 1893, when the defendant, under claim of title as aforesaid, entered upon said land, cut down and removed the trees, houses and other improvements thereon, and took possession of the land in controversy as a portion of Jefferson street; which, up to the latter date, had not been opened or used by the defendant.

It will be seen from the foregoing statement that the questions determinative of the right of the parties are, whether the execution of the deed of August 29, 1865, by the probate judge, was a valid exercise of his authority as trustee, and vested in the city the legal title and the right to the possession of the land in controversy; and if so, whether such title and right has been lost by nonuser. The plaintiff contends that the deed was unauthorized so far as the land in dispute was concerned, because no street was used or laid out over the same at the time of its execution. This objection would merit very serious consideration if the plaintiff was in a position to urge it, since the streets which the people, or legal authorities, have a right to have conveyed are such only

as are actually used or laid out at the time of the entry of the town site. A trustee is not authorized to designate any of the site in possession of an actual occupant as a part of a street. *Pueblo v. Budd*, 19 Colo. 579. But in view of the relation that the plaintiff holds to the property, in our opinion he is precluded from assailing the validity of this deed upon this ground. He was not an occupant of the land at the time the town site was entered and the title thereto vested in the trustee, nor has he ever succeeded to the right of the then occupants. He derived no ownership to the property in dispute by the deed from Sagendorf and wife, since it conveyed only the outlot or block No. 257, whose metes and bounds were specifically described in the map then on record, and which designated the property in question as a part of Jefferson street; but rather must be held to have thereby recognized the existence of the street.

In these circumstances the plaintiff has not acquired the right to question whether the conditions precedent to the right of the trustee to execute a conveyance to the city of the street in question existed, and it must be presumed, under the doctrine announced in several decisions of this court, that the trustee did his duty in this respect, and ascertained that all conditions prerequisite to the execution of this deed had been complied with by the city. We think this case falls within the rule announced in *Murray v. Hobson*, 10 Colo. 66:

" When a trustee, in whom is vested, under the law of congress and by patent from the United States, the lands comprising a town site, to be held in trust for the use and benefit of the occupants thereof, has executed a deed of a parcel of such land to one claiming to be a beneficiary of the trust, the legal title of such parcel passes out of the trustee, and vests in the grantee; also that no individual, not then a beneficiary of the trust and interested in said land, is thereafter in a position to question, in his own right, the validity of such conveyance." *Anderson v. Bartels*, 7 Colo. 256; *Chever v. Horner*, 11 Colo. 68; *Taylor v. Winona & St. Peter R. R. Co.*, 45 Minn. 66.

Nor do we think the plaintiff can successfully invoke the doctrine of adverse possession under color of title, even if that rule obtains against a municipal corporation. This doctrine was not recognized by the the common law, but is the creation of statute. Wood on Lim. p. 2; Angell on Lim. (6th ed.) p. 9. The first act of the English parliament limiting real actions to twenty years was passed in the twenty-first year of the reign of James I, and never became the rule of decision with us. Chap. 17, p. 170, Gen. Stats. Therefore, the only statute in force upon this subject prior to that of 1893 (which in no manner can affect this case) was the act of February 14, 1874 (sec. 2923, Mills' Ann. Stats.) which required five years' payment of taxes under claim and color of title; neither of these requirements are met by the facts disclosed by this record. The property was not assessed for taxation, and hence there is no claim of payment of taxes. The quitclaim deed under which he claims does not constitute color of title, since, as above stated, it does not purport to convey the land in controvesy, but designates a lot whose metes and bounds are specifically described in the map then on file, which description entirely excludes it. *Lebanon Mining Co. v. Rogers*, 8 Colo. 34; *Humphries v. Huffman*, 33 Ohio, 395.

It follows that the plaintiff has no interest in the land in dispute, either by deed or adverse possession, that entitles him to maintain this action, and the judgment of the district court is therefore affirmed.

*Affirmed.*