(May 18, 1907.)

# MATTHEW SCULLY, Appellant, v. LOUISE SQUIER et al., Respondents.

## [90 Pac. 573.]

ENCROACHMENTS ON STREET—INJUNCTION—PUBLIC NUISANCE—DAMAGES TO PUBLIC AND PRIVATE RIGHTS—ABATEMENT OF NUISANCE—TOWNSITE ON PUBLIC DOMAIN—ENTRY OF—DUTY OF MAYOR—PLATTING TOWNSITE—RIGHTS OF OCCUPANTS—RIGHTS OF GENERAL PUBLIC IN UNOCCUPIED LOTS AND STREETS—DUTIES AND POWERS OF MAYOR AND SURVEYOR—TRUST IMPOSED.

1. The city of Lewiston was located on the public domain of the United States, and under the provisions of section 2387 of the Revised Statutes of the United States was entered by the mayor in trust for the several use and benefit of the occupants thereof according to their respective interests. Said section of the statute provides that the execution of such trust as to the disposal of the lots in such town and the proceeds of the sale thereof must be conducted under such regulations as may be prescribed by the legislative authority of the territory.

2. In compliance with the provisions of said section, the territorial legislature passed an act entitled, ''An act to provide for the survey, platting and disposal of the land in the city of Lewiston, Nez Perce county, Idaho, pursuant to the United States Statutes made and provided,'' which act was approved January 8, 1873 (Sess. Laws 1872-73, p. 16).

3. Under the provisions of said act, a surveyor was employed to survey and plat the lands in said town, and was directed by said act to so arrange and adjust the plat as to conform to the conditions of the improvements and occupation of the lots, and the mayor was thereafter directed to make and deliver to the *bona fide* occupants of said lands good and sufficient deeds of conveyance in fee simple and the title to the lots claimed by them according to their respective interests under the provisions of said law.

4. The said plat cut off from the northerly ends of the lots in block 24 about four feet and included the part cut off in D street. At the time said plat was made said lots, for their entire length, were covered by improvements and possessed and occupied.

5. Said surveyor had no authority or right to cut off a portion of said lots and include it in a street.

6. The rules and regulations made by the legislature did not enlarge or diminish the rights of the occupants of the lots, as the

rights of the occupants accrued at the time of the entry of the townsite and could not be defeated by the surveyor.

7. The interests which the occupants possessed previous to the entry, either in the land occupied by them or in the rights of way over adjoining streets and alleys, were secured by such entry.

8. Under the provisions of said section 2387, Revised Statutes, the execution of the trust imposed on the mayor as to the disposal of the lots was conducted under the regulations established by the legislature. The word "disposal" as used in that section must be construed to mean "distribution" when applied to the lots that were actually occupied and possessed, for under said section such lots were already disposed of; that is, they became the property of the occupants, and the occupant of a town lot at the time of the entry of a townsite is its real owner.

9. The trust imposed on the mayor of an incorporated town is for the benefit of the inhabitants, first as individuals, and after that, collectively, as a community, and the title to the occupied lots becomes vested in the trustee for the benefit of the occupants severally at the time such entry is made, and neither the surveyor nor the mayor can deprive them of that title.

10. The surveyor cannot make a paper street in such town and deprive the actual occupants of vested rights, as the only authority the surveyor had was to plat the town in conformity to the use and occupancy of the lots and blocks.

11. The surveyor had no authority to establish streets through and over buildings, nor to cut off any portion or parts of buildings for street purposes.

12. The mayor or surveyor had no authority to change the beneficiaries under such trust.

(Syllabus by the court.)

APPEAL from the District Court of Second Judicial District for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action for mandatory injunction and abatement of a public nuisance, alleged to damage the public as well as private rights. Judgment for defendants. *Affirmed.*

Ben. F. Tweedy, for Appellant.

None of the respondents can question the boundaries of the paper street without establishing a legal or equitable title, owned by him or her at the time of the encroachment of the buildings upon the boundaries of such a street, because

such street as to him or her in the absence of such proof becomes the actual street to the full extent of its boundaries. (*Laughlin v. City of Denver,* 24 Colo. 255, 50 Pac. 917; *Boise City v. Flanagan,* 6 Idaho, 149, 53 Pac. 453.)

No equitable title vests in an occupant at any other time than on the day of filing the application in the land office of the United States. (*Lockwitz v. Larson,* 16 Utah, 275, 52 Pac. 279; *Hussey v. Smith,* 99 U. S. 20, 25 L. ed. 314; *Sturr v. Beck,* 133 U. S. 541, 33 L. ed. 761, 10 Sup. Ct. Rep. 350; *Castner v. Gunther,* 6 Minn. 119 (Gil. 63); *Leech v. Rauch,* 3 Minn. 448 (Gil. 332); *Cook v. Rice,* 2 Colo. 131; *Cofield v. McClelland,* 16 Wall. 331, 21 L. ed. 339.)

The official survey and platting of an existing street whereby the lines dividing the existing street and the property of occupants is ascertained is not the taking of private property within the meaning of the constitution. (*Watkins v. Havighorst,* 13 Okla. 128, 74 Pac. 318.)

The legislature can enact a law for the ascertainment of the boundaries of existing streets and for the establishment of their extent and the space occupied by them, and such law is valid, and there is also vested private rights in the streets. (*Ashby v. Hall,* 119 U. S. 526, 30 L. ed. 469, 7 Sup. Ct. Rep. 308; *Thompson v. Holbrook,* 1 Idaho, 609; *Territory v. Nowland,* 3 Dak. 349, 20 N. W. 430; 26 Am. & Eng. Ency. of Law, 2d ed., 310.)

The ascertainment of the boundaries and the extent of occupancies of portions of the public domain where there are streets includes the ascertainment of the boundaries of existing streets, because an existing street cannot be closed by an official survey and plat. (*Parcher v. Ashby,* 5 Mont. 68, 1 Pac. 204.)

The appellant has the vested right to have the street kept open to the extent of its lines, especially at the time of filing the application to enter the said townsite. (*Parcher v. Ashby,* 5 Mont. 68, 1 Pac. 204; *McLean v. Llewellyn,* 2 Cal. App. 346, 83 Pac. 1083; *Dooly Blk. v. Rapid Transit Co.,* 9 Utah, 31, 24 L. R. A. 610, 33 Pac. 229.)

A lapse of twenty to fifty years before the challenging of the correctness of an official act makes the presumption

*o*

of the correctness of the official act very strong. (*Belcher v. Belcher,* 21 Ky. Law Rep. 1460, 55 S. W. 693; *Brosnaham v. Turner,* 16 La. Ann. 433; *Austin v. Austin,* 50 Me. 74, 79 Am. Dec. 597; *McFate's Appeal,* 105 Pa. St. 323; *Delk v. Punchard,* 64 Tex. 360; *Holmes v. Cleveland etc. Co.,* 93 Fed. 100.)

In not challenging the correctness of the official survey and platting promptly before private rights vested in the D street according to the official survey and permitting the loss of evidence, the respondents are guilty of laches, and, therefore, cannot now be heard to say that the official platting and survey conflict with their boundaries. (*Abraham v. Ordway,* 158 U. S. 416, 39 L. ed. 1036, 15 Sup. Ct. Rep. 894; *Willard v. Wood,* 164 U. S. 502, 41 L. ed. 531, 17 Sup. Ct. Rep. 176; *Penn Mut. L. Ins. Co. v. Austin,* 168 U. S. 685, 42 L. ed. 626, 18 Sup. Ct. Rep. 223; *Gilliher v. Cadwell,* 145 U. S. 368, 371, 36 L. ed. 738, 12 Sup. Ct. Rep. 873; *Cook v. Barret,* 155 Mass. 413, 29 N. E. 625; *Lutgen v. Lutgen,* 64 N. J. Eq. 781, 53 Atl. 625.)

The only power vested in the mayor-trustee was to execute and deliver deeds according to the survey and platting; he could not convey any of the surveyed streets which had been existing, and the only remedy which an occupant had against an incorrect survey and platting of a street was an action in court, joining all parties in interest to compel a correction of the survey and platting. *Taylor v. Brown,* 5 Dak. 335, 40 N. W. 525, establishes that deeds executed in violation of a positive prohibition of law are void.

Occupancy and possession of streets on a government townsite, which streets have been surveyed and platted, and which occupancy is not coupled with the legal or equitable title to the portion of the street occupied, gives such occupant no right to the portion of the street occupied, however long such occupancy and possession may continue. It is a public nuisance, and can never bar the action of a private individual or of the city to abate it, but is always unlawful. (*McLean v. Llewellyn Iron Works,* 2 Cal. App. 346, 83 Pac. 1083; *Laughlin v. City of Denver,* 24 Colo. 255, 50 Pac.

917; *Hall v. Breyfogle,* 162 Ind. 494, 70 N. E. 883; 1 Am.. & Eng. Ency. of Law, 2d ed., 880-882, and notes; *Bohne v. Blankenship,* 25 Ky. Law Rep. 1645, 77 S. W. 919; *Village of Lee v. Harris,* 206 Ill. 428, 99 Am. St. Rep. 176, 69 N. E. 230; *Atlantic City v. Snee,* 68 N. J. L. 39, 52 Atl. 372; *City of Lewiston v. Booth,* 3 Idaho, 692, 34 Pac. 809; *Oakland v. Oakland etc. Co.,* 118 Cal. 160, 50 Pac. 277; *Sheen v. Stothart,* 29 La. Ann. 630; *Hoboken Land etc. Co. v. Hoboken,* 36 N. J. L. 540; *St. Vincent Asylum v. Troy,* 76 N. Y. 108, 32 Am. Rep. 286; *Kopf v. Utter,* 101 Pa. St. 27; *Yates v. Warrenton,* 84 Va. 337, 10 Am. St. Rep. 860, 4 S. E. 18; *Indianapolis v. Kingsbury,* 101 Ind. 200, 51 Am. Rep. 749.)

I. N. Smith, for Respondents.

Lewiston existed prior to the True survey. The settlers did not acquire their right under the plat, nor in virtue thereof; the survey and plat was made for them—they were not made for the survey and plat. (*Parcher v. Ashby,* 5 Mont. 68, 1 Pac. 204; *Ashby v. Hall,* 119 U. S. 526, 30 L. ed. 469, 7 Sup. Ct. Rep. 308.)

"By the entry of the townsite 'in trust for the several use and benefit of the occupants thereof according to their respective interests,' each of such occupants at the time of the entry became, to the extent of their respective holdings, beneficiaries of the trust, and were vested with equitable ownership of the lot or parcel of land to the extent of their occupancy." (*City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599; *Winfield Town Co. v. Maris,* 11 Kan. 128; *Rathbone v. Sterling,* 25 Kan. 444; *Goldberg v. Kidd,* 5 S. Dak. 169, 58 N. W. 574.)

E. B. True had no authority to attempt to take private property for street purposes—nor did the fact that he ran his line where he did deprive any of the owners of their property rights which were then vested. (*City of Helena v. Albertose,* 8 Mont. 499, 20 Pac. 817; *Tredway v. Wilder,* 8 Nev. 91; *Bingham v. Walla Walla,* 3 Wash. Ter. 68, 13 Pac. 408; *Parcher v. Ashby,* 5 Mont. 68, 1 Pac. 204; *Hall v. Ashby,* 2 Mont. 489; *Alemany v. City of Petaluma,* 38

Cal. 553; *Town of Aspen v. Rucker*, 10 Colo. 184, 15 Pac. 791; *Denver v. Kent*, 1 Colo. 336.)

The occupant of a lot at the time of the entry of a townsite is made its real owner. (*Goldberg v. Kidd*, 5 S. Dak. 169, 58 N. W. 574; *City of Pueblo v. Budd*, 19 Colo. 579, 36 Pac. 599; *Cofield v. McClellan*, 16 Wall. 334, 21 L. ed. 339; *Stringfield v. Cain*, 99 U. S. 610, 25 L. ed. 421.)

A person who has a lawful right and is actually and constructively in possession can never be required to take active steps against opposing claims. (*Goldberg v. Kidd*, 5 S. Dak. 169, 58 N. W. 578; *Grosbeck v. Seeley*, 13 Mich. 342; *Baker v. Kelley*, 11 Minn. 480 (496).)

SULLIVAN, J.—This is an action to prevent alleged encroachments on D street in the city of Lewiston. The appellant as plaintiff brought this action against the respondents, alleging that they were encroaching upon said D street, and charging them with having taken for their private use approximately four feet off the south side of said street and of extending their buildings over and upon said four feet of land wrongfully.

The nature of this action is a suit in equity to abate a nuisance alleged to be a public nuisance, damaging to the public as well as to the plaintiff's private rights, and praying that the same be abated and removed, and that an injunction be issued restraining and prohibiting defendants and each of them from encroaching upon said street and for a mandatory injunction against the defendants, and to restore said street to its width as claimed to have been established by the official survey of E. B. True, to wit, eighty feet.

The defendants deny any encroachment upon said street, and allege affirmatively the incorporation of the city of Lewiston, surveying and platting of the city long prior to the said True survey; that according to said original plat and survey, the lots in question were fifty feet in length north and south, except where they widened at the bend in E street (said E street is also called Main street and Montgomery street); that about the year 1874, and long after the

rights of the defendants and their predecessors were vested
to the premises in controversy, the townsite of Lewiston was
entered by the mayor, Henry W. Stainton, under the federal
townsite act; that the defendants and their predecessors in
interest were, long prior to 1874, in the actual occupancy,
the use and enjoyment of the premises in controversy, which
they were enjoying at the time of the commencement of this
suit, on which premises they are now attempting to erect
the three-story brick buildings referred to in the complaint;
that a patent was issued by the United States to the mayor
as trustee, and thereafter the official survey was made; that
said survey was ordered under the federal and territorial
laws; that the declaratory statement therefor was No. 39,
and was made in the United States Land Office at Lewiston,
November 21, 1871, by Levi Ankeny in trust for the inhabi-
tants of the city of Lewiston, claiming settlement in 1861;
that cash entry was made June 6, 1874, therefor by said
Henry W. Stainton in trust; that said True was employed
to make the survey and was commanded as follows: "To so
adjust the said plat as to conform to the condition of the
improvements of and occupation of the lands affected there-
by, and the mayor-trustee was authorized, empowered and
required to make and deliver to the *bona fide* occupants of
such land described in the patent, good and sufficient deeds
in fee simple, according to their respective interests, and
for that purpose was authorized to carry the act into effect";
that in making said survey, more especially the survey of
the south line of said D street, the said True did not pay re-
gard to or attention to the several use and uses of the land
as the same was then occupied by the inhabitants of the city
of Lewiston, and more especially did not pay any attention
to the quantity of land then used and occupied by the de-
fendants and their predecessors in interest, and that said
True did not conform said D street as it was known and used
prior to said survey, nor did he pay due or any regard to
the actual use, occupancy and improvements of the said lots;
that the south line of said D street, as surveyed and de-
lineated by said True, cut several feet off the north end of

the lots of the various inhabitants of Lewiston, which lots had a frontage on D street, and so cut off the lots in controversy owned by these defendants and their predecessors; that said street as surveyed by said True crossed and interfered with buildings then standing on the same, and attempted to devest certain vested rights; that said True did not conform D street to the use of lands nor did he make D street, as marked on his map or plat, conform to or coincide with the actual south line thereof as the same had been and then was used and treated as a public street; that thereafter and after the approval of the said True survey, such steps were taken that in many instances the plat and survey were corrected and changed, and that notwithstanding the erroneous work of said True, the various citizens still continued in the actual use and occupancy of their said lands, and the predecessors of defendants did the same as to the lots involved in this case and which are owned and possessed by them, and that such claim was by occupancy, buildings and improvements, continued from the first occupancy, thence hitherto, and that the land involved, being about four feet on the north end of said lots, never at any time, nor at all, was used or occupied as a street, but was used and occupied by defendants and their predecessors; that after True had made his plat, it was amended, and the defendants aver that the correct south line thereof is now and was by such amendment shown in red ink, and that the red ink line conformed to the true south line and to the several uses and occupancy of the lands involved; that respondent Moxley owned lot 3 in said block 24, having an area of 1250 square feet, both prior to and after said True survey, but that said True gave it only 1173 square feet; that lot 2 in said block as shown by said True survey contained but 1131 square feet, whereas long prior to the said survey and at the time thereof and since, the said lot has in truth and in fact contained 1250 square feet; that the difference between 1250 square feet and 1131 square feet is the strip of approximately four feet wide by twenty-five feet in length which appellant seeks to enjoin the respondent Squier from

holding; that such lot as claimed by the said Squier has been actually covered by a building for more than thirty-five years last past, and was so occupied by said building long prior to the survey of True; that respondent Moxley obtained title to lot 3, said block, by direct deed from Henry D. Stainton, mayor-trustee, and that the plat of the True survey and the size of this lot as stated by him were amended prior to the recordation of said plat and that True's survey gave said lot only 1136 square feet, but the same with an amendment was deeded to said Moxley by said mayor-trustee, and the strip involved herein is the amendment which said mayor deeded to Moxley.

The answer then alleges the rights of respondent Fix, and avers that his right through predecessors antedates said True survey, and that the land claimed by him in addition to that specified in True's survey never was a street or highway, but that said strip was long prior to said survey in the actual, visible, exclusive and notorious possession of said defendant and his predecessors in interest and never constituted a part of D street; that that state of facts existed at the time said True made his survey, and that the appellant when erecting his building did not cover the ground theretofore occupied by his old building, nor by the predecessors in interest of said Scully; that the Grostein building situated on the lot immediately west of the Scully lot was erected seventeen years ago, and that said building extends far out beyond Scully's building and was built bordering on the south line of D street then given to said Grostein by city officers; that said Scully placed his building entirely off of and away from the south line of said D street as it then existed; that the field-notes and plat of block 24 as made by said True did not correspond, and that the same are incorrect, which errors interfered with vested property rights.

The answer then alleges that said respondents are attempting to use only the same ground that they and their predecessors have always used; that the premises of each of the respondents extends to the south line of D street as actually used.

From the foregoing statement, the real issue in the case is very clearly presented. The appellant claims that the defendants have encroached upon and erected their buildings about four feet out on and into said street, while the respondents contend that they have not done so, but that their buildings only extend northward to the line which has been occupied and on which buildings have been erected for more than thirty years. The entire controversy arises over the correctness of the said True survey and his field-notes thereof.

After the trial of the case, the court made quite elaborate findings of fact, and deduced therefrom conclusions of law to the effect that the case made on behalf of the appellant was devoid of equity and that he was without any standing in a court of equity; that he has no such interest as would permit him to maintain this action, and that the defendants were entitled to judgment and decree in their favor, and judgment was entered accordingly, dismissing the action. This appeal is from the judgment and the order denying a new trial.

In deciding this case, it becomes necessary to recur to a few of the historical facts connected with the location and settlement of the city of Lewiston. It was first settled in the year 1861, upon what was then a part of the Nez Perce Reservation. At that time the territory now included in the state of Idaho was a part of the territories of Washington, Nebraska, Dakota and Utah. (See *People v. Williams*, 1 Idaho, 85.) Nez Perce county, in which the city of Lewiston is located, was organized under an act of the legislature of Washington territory on December 20, 1861. The territory of Idaho was organized under an act of Congress approved March 3, 1863, and its first territorial legislature convened on the 7th of December, 1863, and adjourned on the fourth day of February, 1864, which session was held at the city of Lewiston. At that session of the legislature, by an act approved February 4, 1864, the boundaries of Nez Perce county were changed and that county reorganized. (1 Sess. Laws, p. 628). Lewiston at that time was a

distributing point for the various mining camps to the north-east, east and southeast. The city of Lewiston was incor-porated under the laws of Washington territory by an act approved January 15, 1863, and was reincorporated by an act of the legislature of Idaho in 1866. (Sess. Laws 1866, Fourth Session, p. 87.)

The first section of that act defines the boundaries of said city, and recites that the territory incorporated "constitute in square form, as near as practicable, according to govern-ment survey, one square mile, intended to include the square mile of land stipulated for in favor of said town in the treaty between the United States and the Nez Perce tribe of Indians now pending, is hereby organized into a municipal corpora-tion under the name of 'The City of Lewiston.'" It would appear from this that a treaty was then pending between the United States and the Nez Perce tribe of Indians for the tract of land on which the city of Lewiston stood, to the ex-tent of one square mile.

Levi Ankeny was mayor of the city of Lewiston in 1871, and on November 21st of that year filed his declaratory state-ment No. 39 in the United States Land Office at Lewiston, proposing to enter the lands included within the borders of said incorporation, in trust for the inhabitants of the city of Lewiston, claiming settlement in 1861. Cash entry was made for said lands on June 6, 1874, by Henry W. Stainton, Mayor, in trust for the inhabitants of said city.

This entry was made under the provisions of section 2387 of the Revised Statutes of the United States, which section is as follows:

"(Entry of town authorities in trust for occupants.) Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authori-ties thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use

and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated.''

The trust provided for by this section is dual in its nature. It exists for the benefit of the occupants as individuals, and also collectively as a community. The title to occupants of lots vested in the mayor-trustee for their benefit severally when the entry was made. The title to lots to which no valid claims are held by individuals is taken in trust by the trustee for the occupants of the townsite collectively. (See notes to said section 2387, 6 Fed. Stat. Ann., p. 343.) Under the provisions of said section, the execution of the trust created, as to the disposal of the lots in such town, must be conducted under such regulations as may be prescribed by the legislature of the state wherein such town is located.

The legislature of the territory by an act approved January 8, 1873 (7 Sess. Laws, p. 16), provided for the survey, platting and disposal of the land in the city of Lewiston pursuant to the United States statutes in regard to such matters. Said act provides that the mayor-trustee shall cause to be made and filed in his office by a competent person a plat of the land within said city, divided into blocks and lots, and ''to make and deliver to the *bona fide* occupants of such portions of said land described in said patent from the government of the United States who may be entitled thereto, good and sufficient deeds of conveyance in fee simple according to their respective rights.''

Under the provisions of said laws, one E. B. True was employed to survey and plat the lands in said town, and was commanded to adjust said plat so as to conform to the conditions of the improvements and the use and occupation of such lands by the settler, and the mayor was required to make and deliver to the *bona fide* occupants of such lands good and sufficient deeds of conveyance in fee simple according to their respective interests, under the provisions of said law.

It appears from the evidence in the case that said True made a plat of said town including block 24, in which block are the lots involved in this case, so as to make the lots about forty-six feet long, north and south, when, as a matter of fact, most, if not all, of the lots in that block were fifty feet long, north and south, as indicated by the buildings and other improvements thereon. The question is fairly presented as to whether said True had any authority whatever to make said plat so as to interfere with and cut off a part of the buildings and improvements of the occupants of such lots. In other words whether under the law a surveyor, who is employed to plat such a townsite after its entry by the proper officer, can widen a street, and in doing so cut off a portion of the buildings and improvements of the lot owners bordering on such street.

It must be kept in mind that Lewiston existed prior to the True survey. The settlers did not acquire their right under the plat nor by virtue of it. The survey and plat was made for them; they were not made for the survey and plat.

In *Parcher v. Ashby*, 5 Mont. 68, 1 Pac. 204, a Montana case, the court had under consideration a controversy over a strip of land sixteen feet wide on Rodney street in the town of Helena. That townsite was entered by the probate judge, and the court there held that the survey must conform as near as may be to the existing rights and interests of the occupants, and that no valid and subsisting easements could be destroyed by the survey and the acceptance of the plat by the county commissioners. The court in referring to the requirements prescribed by the legislature of Montana, said:

"These regulations could not enlarge or diminish the rights or interests of occupants of the lots. And so our legislature provided that the survey and plat of the townsite should conform, as near as might be, to the existing rights, interests, and claims of the occupants thereof. The lots were to be surveyed and the streets and alleys as they existed prior to entry were to be respected and recognized. For in no other manner could the occupants obtain title to their lots

according to their several rights and interests. The plat and survey of the probate judge must conform to the old survey by which the occupants had held and occupied their lots prior to the entry of the townsite; otherwise his plat and survey is so far void. . . . . The rights of occupants accrued before the entry of the townsite by the probate judge, and the mere fact that his plat and survey failed to designate a street or alley as it existed before his entry and survey does not thereby destroy such street or alley and change the ground occupied by the same into a lot that can be sold. And so, for the same reason, if this plat and survey had designated ground theretofore occupied as a lot, as an alley or street, said designation would not in any manner affect the right of the occupant to his lot.''

It is there held that the plat and survey could not in any manner affect the right of the occupant to his lot. The rights of the occupant had attached prior to True's survey, and the entry of the townsite was made in trust for the occupants who were in possession of particular tracts of land as well as for the community in general. The surveyor could not devest them of their rights. The survey was for their benefit and should have confirmed those rights.

In *Ashby v. Hall,* 119 U. S. 526, 30 L. ed. 469, 7 Sup. Ct. Rep. 308, the supreme court of the United States held that the interests which the occupants possessed previous to the entry, either in the land occupied by them or in rights of way over adjoining streets and alleys, were secured by it. The court said: ''The power vested in the legislature of the territory . . . . was confined to regulations for the disposal of the lots and proceeds of the sales. These regulations might extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants when the extent of their occupancy was established.'' Upon this point, see, also, *Bingham v. Walla Walla,* 3 Wash. Ter. 68, 13 Pac. 408.

In *Goldberg v. Kidd,* 5 S. Dak. 169, 58 N. W. 574, in commenting upon the word "disposal" as used in section 2387, Revised Statutes of the United States, the court said: "As to the lots actually occupied when the entry was made, we think the word 'disposal' must be construed to mean 'distribution,' which words are often used synonymously, for, as to such lots, they were already disposed of, that is, they became at once the property equitably of the occupants."

In *Stringfellow v. Cain,* 99 U. S. 610, 25 L. ed. 421, the court said: "The occupant of a lot at the time the entry of a townsite is made is its real owner."

In the case of *City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599, it is said: "The entry of the townsite, therefore, being 'in trust for the several use and benefit of the occupants thereof, according to their respective interests,' each of such occupants at the time of the entry became, to the extent of their respective holdings, beneficiaries of the trust, and were vested with equitable ownership of the lot or parcel of land to the extent of their occupancy."

E. B. True had no authority to attempt to take private property for street purposes, nor did the fact that he ran his survey where he did deprive any of the owners of their property rights which were then vested. (*City of Helena v. Albertose,* 8 Mont. 499, 20 Pac. 817; *Tredway v. Wilder,* 8 Neb. 91; *Bingham v. Walla Walla,* 3 Wash. Ter. 68, 13 Pac. 408; *Parcher v. Ashby,* 5 Mont. 68, 1 Pac. 204; *Hall v. Ashby,* 2 Mont. 489; *Alemany v. City of Petaluma,* 38 Cal. 553; *Town of Aspen v. Rucker,* 10 Colo. 184, 15 Pac. 791; *Denver v. Kent,* 1 Colo. 336.)

It would appear from the provisions of said section 2387 of the Revised Statutes of the United States, that such land is permitted to be entered by the proper authority for the use and benefit of the occupants thereof according to their respective interests. As above stated, such trusts exist for the benefit of the inhabitants, first as individuals, and after that, collectively as a community. And the title to occupied lots becomes vested in the trustee for the benefit of the occupants severally at the time such entry is made. If the

surveyor who is employed to plat the town has the authority to cut off four feet from the lots on a certain block, he certainly has the authority to cut off more, and where is the line to be drawn? Can the surveyor make a paper street in such a town and deprive the actual occupants of vested rights? We think not. The occupants possessed certain rights in and to the lots occupied by them before the entry, and the only authority the surveyor had was to plat the town in conformity to the use and occupancy of the lots and blocks. The plat must be made for the benefit and use of the occupants. The surveyor's power was limited; he had no authority to establish streets through and over buildings nor to cut off any portions or parts of buildings for that purpose. If that were not true, it would have been better for the occupants not to have had the entry made, for they had the right to occupy their lots as they were then occupying them. If the entry was not made in their interests, their rights were not as well established after the entry as before. The object and purpose of the statutes was to benefit the occupants and not to destroy their rights. In this case the occupants had property rights in the premises occupied by them, and the surveyor had no authority to take private property for street purposes or to establish any portion of a street on private property. The occupant's right and ownership did not come by virtue of the plat and survey; it came by reason of his possession and occupancy and the improvements that he had placed upon his lot.

As before stated, the trust of the mayor was dual in its nature. The occupants of the lots, each as individuals, were entitled to deeds to their lots as occupied by them. The community of the city as a whole was entitled to the unoccupied lots and the public in general were entitled to the streets. The individual had no right under the law to encroach upon the streets, and the city had no right to appropriate a portion of the lots of the occupants for a street. The mayor and the surveyor had no authority to change the beneficiaries under this trust.

There is no dispute in the evidence but that the defendants

and their predecessors in interest claimed and occupied the
lots in question to their full length. Buildings and other
improvements had entirely covered the said lots. The owners
occupied and possessed said lots fifty feet in length. It is
not claimed or shown that any part of said lots were ever
used as a street, or any part thereof, nor that the city ever
claimed any part thereof as a portion of the street, and the
city surveyor cannot make any portion of said lots a street
by simply making a plat and indicating on such plat that
said lots were only forty-five or forty-six feet in length.
The mayor-trustee had no judicial power in this matter—
neither had the surveyor. The surveyor and mayor cannot
dedicate to the public as a street parts of lots occupied and
possessed by individuals.

The appellant rests his case here on the making and ap-
proval of said plat. If private rights can be taken in that
way, it is a novel proceeding and a proposition unknown to
our law. The record clearly shows that the mayor recognized
the incorrectness of the plat, as he executed deeds showing
that fact long prior to the time that said plat was filed.
While the plat was made and approved in 1875, it was not
recorded until 1879. The city of Lewiston is not here com-
plaining of the erection of buildings on the lots referred to
in her streets. The record clearly shows that the city has
for forty-five years known that the occupants of the lots on
said block 24 were claiming that such lots were fifty feet in
length, and that they had buildings and other improvements
covering said lots.

It is contended by counsel for appellant that none of the
respondents can question the boundaries of D street with-
out establishing a legal or equitable title owned by him at the
time of the encroachment with the buildings upon the bounda-
ries of such street, and that no equitable title vests in an
occupant, other than at the time of the day of filing the
application in the land office of the United States.

We think it sufficiently appears from the evidence that
the lots in question were occupied, claimed and possessed
ever since long before the application was made to enter said

land, either by the present owners or their predecessors in interest, and as heretofore stated, it also appears that they claimed their said lots to be fifty feet in length, and that they or their predecessors have had improvements of some kind covering said entire fifty feet. That being true, the counsel's contention is fully met by the proof in the case.

Taking the whole record, it sufficiently appears that that portion of D street in controversy has never been possessed and occupied and used as a street, although the other parts of the street have been used since 1861, about forty-six years. We have no doubt but what appellant, regardless of the suggestions of the city engineer, has the right to extend his building out even with the other buildings placed along said street, and that the city has no right to the use of said four feet, or thereabouts, for a part of D street.

The judgment of the court below must be affirmed, with costs in favor of the respondents.

Ailshie, C. J., concurs.

ON PETITION FOR REHEARING.

(June 18, 1907.)

PER CURIAM.—A petition for rehearing has been filed in this case. We will say at the outset that no discourtesy to counsel for appellant was intended in any of the statements contained in the opinion in this case. We have the utmost confidence in counsel's honor and ability.

Counsel states that in the commencement of this action and in its prosecution he largely relied on the case of *Boise City v. Flanagan,* 6 Idaho, 149, 53 Pac. 453. The facts of that case and the case at bar are not similar or parallel. In that case one James Stout claimed the tract in controversy. A part of it he had inclosed and improved and the remaining part was not inclosed. Both the inclosed and the uninclosed lots he claimed as one tract. On the second day of May, 1870, the United States conveyed by patent the land included in said Boise City townsite to Henry Elliot Prick-

ett, then mayor of said city, in trust for the several use and benefit of the occupants of said townsite. The mayor had the same platted into blocks, streets and alleys, and the part of the tract so claimed by Stout, which had not been inclosed by him or improved in any way or manner, lay in the street. Upon proper application by Stout to the mayor for a deed to the part so platted, a deed was issued to him by the mayor for said fractional block, as it was called. Stout thereafter, in May, 1871, sold and conveyed said fractional block to one James Dunn, in which conveyance he also described the land in controversy and platted as a street. The land so platted as a street had not been inclosed up to that date, May, 1871, and was not inclosed by said Dunn until June, 1878, and from the time that Dunn inclosed it on down to the commencement of the action the city repeatedly asserted its control and right to control over said tract as a part of the streets of said city, and repeatedly notified Dunn to remove all fences and improvements, which he promised to do.

In the case at bar, the defendants and their grantors had been in the exclusive, actual possession of all of said lots, and had them covered with buildings and the parts not covered with buildings were inclosed by fences. They were in *possessio pedis* of every square foot of said lots. That being true, the city authorities had notice of their claims, and the surveyor had notice that they were in actual occupation and possession of said lots fifty feet in length and had improvements thereon.

In the Flanagan case, when the surveyor came to plat Boise City, he found no improvements whatever on the tract in controversy, and platted the portion claimed by Dunn as a part of the streets of said city. Said tract laid open as a part of said street until 1878—for more than six years after Dunn had purchased the fractional block of Stout, before he fenced it, and when he was notified by the city authorities to remove his fence from said premises, he promised to remove it. That case is very different from the one at bar, for, regardless of the E. B. True survey, and regardless

of the city authorities, which authorities never at any time claimed any portion of the lots of defendants in this case, nor notified them to remove their improvements from any part of the lots, the defendants and their grantors had steadfastly claimed the same, and the most of them had received deeds from the mayor for said lots fifty feet in length. Their actions and conduct could not be taken as an estoppel against them; while the actions and conduct of Stout and Dunn in the Flanagan case clearly show that if they had any rights to the land in controversy in that case, they were such as to estop them from claiming them against the city.

In the case at bar we find no laches, waiver of rights or ratifications of survey such as would estop the defendants from claiming said lots fifty feet in length. So far as the record shows, the city never has questioned the right of the defendants, in this action, in and to said lots for their full length, fifty feet.

Counsel also cites *City of Walla Walla v. Moore,* 2 Pac. 187, as a case supporting his contention. The court held therein that a party may by his acts so recognize boundaries as marked out in a recorded plat of a city as to estop him from denying the correctness of such boundaries. The court in that opinion says: "The only title claimed by the defendants was derived from D. S. Baker, and if the said D. S. Baker was not in a situation to assert his title to the land as against the public at the time he conveyed the land, it will follow, under the circumstances of this case, that defendants will occupy the same situation."

It would seem from that statement in the opinion, that the grantor of the defendants in that case, at the time he sold said lots to them, was not in a position to assert his title to said land as against the city authorities. But not so in the case at bar. The grantors of the defendants in the case at bar were in a position or situation to assert their title to said lots as against the city of Lewiston, for the reason that they had buildings or inclosures covering said entire lots and were claiming them at the time the entry was made by the mayor. There are other facts stated in the opinion in that case which show that the defendants recognized the boundaries of said

streets and lots, and the court held as follows: "These acts and some others of a similar nature appearing in the record, in our opinion estop him as above stated." That is not a case in point.

Counsel also cites *Laughlin v. City of Denver,* 24 Colo. 255, 50 Pac. 917. In that case it appears from the averments of the complaint that Laughlin entered upon the land in dispute, July 13, 1865, under a deed from Andrew and Elizabeth Sagendorf, and had held exclusive, continued and uninterrupted possession of said land until February, 1893, when the defendant city, without leave and over the protest of plaintiff, forcibly entered upon said land, and removed certain houses and fences and cut down and removed certain trees, ousted and ejected the plaintiff therefrom, and converted and used said land for a street. It appears that on May 29, 1865, the city surveyor filed with the clerk of said city of Denver a map of the then city of Denver, which was approved by the city council on June 22, 1865, and filed for record with the clerk and recorder of the county in which said city is located on June 29, 1865. There is shown on said map outlot or block No. 257 in what is known as the "Western Division" of the city of Denver and to the west of said outlot is marked "Jefferson Street." The land in dispute in that case was a part of Jefferson street and so marked. On August 29, 1865, the probate judge in pursuance of the territorial statute, conveyed by deed to the defendant city the streets, lanes, avenues and alleys of the city of Denver lying within the tract of land included in said surveyor's plat, including Jefferson street, which deed was recorded on June 8, 1867. On July 13, 1865, Laughlin bought from Sagendorf and wife, the occupants thereof, a tract of land inclosed by a certain fence, which included the land described in the complaint upon which there stood at the time a loghouse, and also the land described in said surveyor's map as outlot or block No. 257, and received from them a quitclaim deed, which Laughlin supposed described the whole tract, but which, in fact, conveyed only that portion designated as outlot No. 257. Laughlin entered into possession of the land so purchased and occupied and lived in the loghouse situated thereon, and in 1866 planted trees

and built a stable, corral, barn and outhouses, and in 1871 built a frame house on the land in dispute, plowed and used the balance of the land for gardening and grazing purposes; occupied and used, cultivated and possessed said land uninterruptedly from July 13, 1865, to February 10, 1893, when the city, under claim of title as aforesaid, entered upon said land and cut down and removed the trees, houses and other improvements therefrom, and took possession of the land in controversy as a portion of Jefferson street, which, up to the latter date, had not been opened or used by the defendant.

At the outset the court says in that case that on the foregoing statement of facts the question determinative of the right of the parties is whether the execution of the deed of August 29, 1865, by the probate judge was a valid exercise of his authority as trustee, and vested in the city the legal title and the right to the possession of the land in controversy, and if so, whether such title and right has been lost by nonuser. In that case the plaintiff contended that the deed was unauthorized so far as the land in dispute was concerned, because no street was laid out over the same at the time of its execution, and the court says: "This objection would merit very serious consideration if the plaintiff was in a position to urge it, since the streets which the people or legal authorities have a right to have conveyed are such only as are actually used or laid out at the time of the entry of the townsite."

And further says: "A trustee is not authorized to designate any of the site in the possession of an actual occupant as a part of a street."

This last statement is what we hold in this case; that the trustee-mayor had no authority to designate any part of the townsite that was in the possession of an actual occupant as a part of a street. The court then proceeds and says: "But in view of the relation that the plaintiff holds to the property, in our opinion he is precluded from assailing the validity of this deed upon this ground. He was not an occupant of the land at the time the townsite was entered and the title thereto vested in the trustee, nor has he ever succeeded to the right of the then occupants."

While, in the case at bar, we hold from the evidence that the

respondents did derive their rights from the fact of being on the land at the time it was entered by the mayor, or derived their rights from their predecessors who were on the lots at the time. However, if in fact the rule laid down in that case is contrary to the rule that we have laid down in this case, we are not inclined to follow it. In that case the court held that Laughlin had no right by adverse possession, as the deed under which he claimed did not purport to convey the land in controversy and therefore did not constitute color of title. In the case at bar, the respondents and their predecessors in interest have been in the actual physical possession of the said lots their entire length, fifty feet, for thirty-five or forty years, and the city has not at any time molested, interfered with or disputed their right and ownership therein.

Laches cannot be imputed to the respondents because they have not brought an action against the city to determine their rights, as they were in possession and in absolute control of said lots. The respondents and their predecessors in interest having been in possession of the lots involved in this case, with improvements covering the entire lots, claiming them as their own and exercising acts of ownership over them, the principle of estoppel cannot be invoked against them because they have not been more aggressive and brought suits against the city for the purpose of establishing their rights thereto.

A rehearing is denied.